UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDRE UNDERWOOD,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>R. COX and C. STANLEY,<br><br>　　　　Defendants. | Case No. 1:16-cv-00597-AWI-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS TO DISMISS CLAIMS CONSISTENT WITH MAGISTRATE JUDGE'S PRIOR ORDER IN LIGHT OF <u>WILLIAMS</u> DECISION<br><br>(ECF NOS. 9, 10, & 14)<br><br>OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN (14) DAYS |

Andre Underwood ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff consented to magistrate judge jurisdiction. (ECF No. 7). Defendants declined to consent to magistrate judge jurisdiction. (ECF No. 23).

The Court previously screened Plaintiff's complaint before any defendants appeared. (ECF No. 10). The Court found that Plaintiff stated a cognizable claim against Defendants R. Cox and C. Stanley for violation of the Eighth Amendment based on conditions of confinement (specifically the lack of outdoor exercise), and dismissed all other claims and defendants. (ECF Nos. 10 & 14).

As described below, in light of Ninth Circuit authority, this Court is recommending that the assigned district judge dismiss claims and defendants consistent with the orders by the magistrate judge at the screening stage.

## I.　**WILLIAMS v. KING**

On November 9, 2017, the United States Court of Appeals for the Ninth Circuit held that a magistrate judge lacked jurisdiction to dismiss a prisoner's case for failure to state a claim at the screening stage where the Plaintiff had consented to magistrate judge jurisdiction

and defendants had not yet been served. Williams v. King, 875 F.3d 500 (9th Cir. 2017). Specifically, the Ninth Circuit held that "28 U.S.C. § 636(c)(1) requires the consent of all plaintiffs and defendants named in the complaint—irrespective of service of process—before jurisdiction may vest in a magistrate judge to hear and decide a civil case that a district court would otherwise hear." Id. at 501.

Here, the defendants were not served at the time the Court issued its orders dismissing claims and defendants, and therefore had not appeared or consented to magistrate judge jurisdiction. Accordingly, the magistrate judge lacked jurisdiction to dismiss claims and defendants based solely on Plaintiff's consent.

In light of the holding in Williams, this Court will recommend to the assigned district judge that he dismiss the claims and defendants previously dismissed by this Court, for the reasons provided in the Court's screening order.

## II. SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief…." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). While

factual allegations are accepted as true, legal conclusions are not. Id.

In determining whether a complaint states an actionable claim, the Court must accept the allegations in the complaint as true, Hospital Bldg. Co. v. Trs. of Rex Hospital, 425 U.S. 738, 740 (1976), construe *pro se* pleadings liberally in the light most favorable to the plaintiff, Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000), and resolve all doubts in the plaintiff's favor. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after Iqbal).

### III. SUMMARY OF PLAINTIFF'S FIRST AMENDED COMPLAINT

As Plaintiff did in his original complaint, Plaintiff alleges that on September 8, 2014, while confined at Kern Valley State Prison ("KVSP") in the custody of the California Department of Corrections and Rehabilitation ("CDCR"), Plaintiff gave a urine sample, which tested positive for THC. Plaintiff was issued a Rules Violation Report ("RVR") on September 22, 2014. Plaintiff entered a plea of guilty and was found guilty.

For this violation, Plaintiff was assessed 90 days' loss of privileges to include placement on temporary C-status, no family visits, no dayroom, no telephone, no yard, no access to any other recreational or entertainment activities, and one fourth the maximum monthly canteen draw as authorized by the secretary.

Plaintiff appealed this disposition, specifically the denial of yard and exercise. Plaintiff requested that yard privileges be reinstated. Much of Plaintiff's complaint discusses his correspondence with the appeals offices, as the various prison grievance officials repeatedly denied his appeals for various procedural and other reasons. Plaintiff alleges that these bases were improper and violated CDCR rules for processing grievances.

On November 12, 2014, KVSP Facility B was on lock down status and all inmates were being escorted in mechanical restraints, i.e., handcuffs connected to chains. Correctional Officer S. Pittman approached Plaintiff's cell and ordered plaintiff to submit to a urinalysis

sample. Plaintiff asked Pittman if he had to do it while handcuffed and Pittman said yes. Upon hearing Pittman's answer, Plaintiff refused.

On November 20, 2014, Plaintiff was issued an RVR for refusing to submit to a urinalysis sample. Plaintiff was found guilty. Defendant C. Stanley assessed Plaintiff 90 days' loss of privileges to include placement on temporary C-status, no family visits, no dayroom, no telephone, no yard/exercise, no access to any other recreational or entertainment activities, and one fourth the maximum monthly canteen draw as authorized by the secretary. Defendant Stanley also assessed and imposed loss of visiting for 180 days to be followed by non-contact visiting status for 180 days. Defendant Stanley also placed Plaintiff on disciplinary detention for 90 days. Plaintiff remained on disciplinary detention the full 90 days without any outdoor exercise opportunities.

Plaintiff again filed repeated grievances throughout the prison appeal system, which were denied. Plaintiff alleges that such denials were improper.

## IV. CRUEL AND UNUSUAL PUNISHMENT CLAIM

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the

4

Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

Prison officials violate the Eighth Amendment's prohibition against cruel and unusual punishment when they deny humane conditions of confinement with deliberate indifference. Farmer v. Brennan, 511 U.S. 825, 832 (1994). To state a claim for such an Eighth Amendment violation, an inmate must show both objective and subjective components. Clement v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002). The objective component requires an "objectively insufficiently humane condition violative of the Eighth Amendment" which poses a substantial risk of serious harm. Osolinski v. Kane, 92 F.3d 934, 938 (9th Cir. 1996). The subjective component requires prison officials to have acted with a culpable mental state, which is "deliberate indifference" to the substantial risk of serious harm. Farmer, 511 U.S. at 837-38; *Estelle v. Gamble*, 429 U.S. 97, 104-06 (1976). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

The Ninth Circuit has issued many decisions concerning when the deprivation of

outdoor exercise violates the Eighth Amendment. For example, the Ninth Circuit held that deprivation of outdoor exercise for 21 days as a result of disciplinary proceedings did not violate the Eighth Amendment. See May v. Baldwin, 109 F.3d 557 (9th Cir. 1997). The Court provided the following reasoning:

> To prevail on a "conditions of confinement" claim, a plaintiff must show serious deprivation and deliberate indifference. [Plaintiff's] claims that he was denied the opportunity to exercise outdoors for 21 days while in DSU, and that he has received inadequate food, water, sanitation, and medical care, do not rise to this standard. Although exercise is one of the basic human necessities protected by the Eighth Amendment, a temporary denial of outdoor exercise with no medical effects is not a substantial deprivation. [Plaintiff] also has failed to allege facts establishing the deprivation of adequate food, drinking water, sanitation, or personal hygiene items. Moreover, there is no evidence of deliberate indifference to [Plaintiff's] medical needs. Finally, it is clear that confining an inmate to his cell for less than 24 hours in order to encourage compliance with prison security regulations does not rise to the level of deliberate indifference. Accordingly, we affirm the district court's grant of summary judgment on each of [Plaintiff's] claims.

Id. at 565–66 (internal citations and quotations omitted). Similarly, the Ninth Circuit reversed a district court's grant of an injunction that had been in the prisoner's favor, and held that the prisoner's deprivation of outside exercise for most of a five-year period met constitutional standards. The Court explained:

> At the outset, we agree that ordinarily the lack of outside exercise for extended periods is a sufficiently serious deprivation and thus meets the requisite harm necessary to satisfy *Wilson's* objective test. Exercise has been determined to be one of the basic human necessities protected by the Eighth Amendment. As the *Wilson* Court stated, to satisfy the objective test, the Eighth Amendment violation must include "the deprivation of a single, identifiable human need such as food, warmth, or *exercise.*" *Wilson,* 501 U.S. at ––––, 111 S.Ct. at 2327 (emphasis added). In addition, this circuit has determined the long-term denial of *outside* exercise is unconstitutional. In *Spain v. Procunier,* 600 F.2d 189 (9th Cir. 1979), the court declared unconstitutional the deprivation of outdoor exercise for inmates held longer than four years. *Id.* at 200. [Plaintiff] has been denied such exercise privileges for considerable periods of time and thus has suffered a sufficiently serious deprivation under the Eighth Amendment.

> The question presented in this case is whether curtailing these outdoor exercise privileges as to [Plaintiff], because he both abused them and represents a grave security risk when outside his cell, meets the subjective requirements for an Eighth Amendment violation. We think not. [Plaintiff's] loss of outside exercise privileges is directly linked to his own misconduct, which raises serious and legitimate security concerns within the prison. We note in particular [Plaintiff's] armed attack on two correctional officers as he exited the outside exercise cubicle on August 14, 1989, *which he vowed to repeat*. The physical threat he poses to staff and other inmates is well documented and has already been discussed at length in this opinion.
>
> …
>
> We reiterate what appears to be the central theme of this opinion: [Plaintiff] is the master of his own fate. As long as he engages in violent and disruptive behavior, prison officials are authorized and indeed required to take appropriate measures to maintain prison order and discipline and protect staff and other prisoners from such violent inmates. As soon as [Plaintiff's] actions indicate he is no longer a serious security threat, his exercise privileges will be restored. We conclude that the district court's determination that the restriction on [Plaintiff's] exercise privileges shows deliberate indifference to his well-being is not supported by the record. Accordingly, his Eighth Amendment claim fails as to this issue.

LeMaire v. Maass, 12 F.3d 1444, 1457–58 (9th Cir. 1993) (emphasis in original). See also Norwood v. Vance, 591 F.3d 1062, 1069-70 (9th Cir. 2010), holding that prison officials had qualified immunity where they had denied the prisoner outdoor exercise during four separate extended lockdowns over the course of two years. That Court examined many factors to reach this conclusion including the basis of the prison's decision and empirical evidence that violence had taken place during outdoor exercise.

In contrast, in Keenan v. Hall, 83 F.3d 1083, 1087 (9th Cir. 1996), opinion amended on denial of reh'g (9th Cir. 1998) 135 F.3d 1318, the Ninth Circuit held that an Eighth Amendment claim based on denial of exercise should proceed to trial where inmate was denied outdoor exercise for six months as part of his punishment for violating prison rules regarding possession of weapons. The Keenan court relied on the proposition that "[d]eprivation of outdoor exercise violates the Eighth Amendment rights of inmates confined to continuous and long-term segregation." Id. at 187-90, citing Spain v. Procunier, 600 F.2d 189, 199 (9th Cir. 1979) (Kennedy, J.) ("There is substantial agreement among the cases in this area that some form of regular outdoor exercise is extremely important to the psychological and physical well being of

the inmates."); Toussaint v. Yockey, 722 F.2d 1490, 1492–93 (9th Cir. 1984) (upholding preliminary injunction requiring outdoor exercise); Allen v. Sakai, 48 F.3d 1082, 1087–88 (9th Cir. 1994) (no qualified immunity to outdoor exercise claim).

Here, Plaintiff has alleged that he was twice denied outdoor exercise time for 90 days each time. The deprivations were a result of disciplinary proceedings. Plaintiff does not allege whether he suffered from medical injury as a result of the deprivation. The Court also does not have the benefit of the prison's point of view, including why such a sentence was imposed and what safety and security interests, if any, contributed to the sentence.

After review of the law and allegations, the Court will allow Plaintiff's claims against Defendant R. Cox and C. Stanley to proceed on the claim of violation of the Eighth Amendment based on conditions of confinement, specifically the lack of outdoor exercise. Those are the two prison officials who imposed the sentences related to the underlying disciplinary proceedings. The Court finds that Plaintiff has stated cognizable claim, and that Plaintiff's claim should be decided based on a fuller record including Defendants' position. Put another way, the Court is not making a determination that Plaintiff's factual allegations, even if true, do or do not constitute a constitutional violation, but it finds that Plaintiff's claim is sufficient to proceed past the screening stage.

## V. CLAIMS BASED ON GRIEVANCE PROCESS

Plaintiff also asserts that Defendants' failure to grant Plaintiff's grievances, including Defendants' rejection of Plaintiff's grievances on various procedural grounds, violated the constitution. In particular, Plaintiff asserts claims for violation of due process under the Fourteenth Amendment and deliberate indifference under the Eighth Amendment.

Defendants' actions in responding to Plaintiff's appeals, alone, cannot give rise to any claims for relief under section 1983 for violation of due process. The Ninth Circuit has held that inmates have no protected interest in an inmate grievance procedure arising directly from the Due Process Clause. See Ramirez v. Galaza, 334 F.3d 850, 869 (9th Cir. 2003) ("[I]nmates lack a separate constitutional entitlement to a specific prison grievance procedure") (citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988) (finding that the due process clause of the

Fourteenth Amendment creates "no legitimate claim of entitlement to a [prison] grievance procedure")). Even the non-existence of, or the failure of prison officials to properly implement, an administrative appeals process within the prison system does not raise constitutional concerns. Mann, 855 F.2d at 640. Accordingly, the prison grievance procedure does not confer any substantive constitutional rights upon inmates, and actions in reviewing and denying inmate appeals generally do not serve as a basis for liability under section 1983.

Deliberate indifference to an inmate's health or safety may violate the Eighth Amendment's proscription against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). A prison official violates the Eighth Amendment only when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious, and (2) the official is, subjectively, deliberately indifferent to the inmate's health or safety. See Farmer, 511 U.S. at 834. If Plaintiff's grievance concerned an ongoing violation and an administrator had the ability to prevent that ongoing violation, and the administrator acted with deliberate indifference in failing to do so, it is possible that such conduct could state a claim. However, merely alleging that a defendant reviewed Plaintiff's grievance but failed to grant it is not enough to state a claim.

Additionally, supervisory personnel are generally not liable under § 1983 for the actions of their employees. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that there is no *respondeat superior* liability under § 1983). Knowledge and acquiescence of a subordinate's misconduct is insufficient to establish liability; each government official is only liable for his or her own misconduct. See Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009). To state a claim for relief under § 1983 based on a theory of supervisory liability, Plaintiff must allege some facts that would support a claim that (1) each of these supervisory defendants proximately caused the deprivation of rights of which Plaintiff complains, see Harris v. City of Roseburg, 664 F.2d 1121, 1125 (9th Cir. 1981); (2) each of these supervisory defendants failed to properly train or supervise personnel resulting in the alleged deprivation, Ybarra v. Reno Thunderbird Mobile Home Village, 723 F.2d 675, 680 (9th Cir. 1984); (3) the alleged deprivation resulted from custom or policy for which each of the supervisory defendants was responsible, see id.; or

(4) each of the supervisory defendants knew of the alleged misconduct and failed to act to prevent future misconduct, Taylor, 880 F.2d at 1045.

Based on Plaintiff's allegations, which seemingly extend to everyone involved in the grievance process, Plaintiff has failed to state any constitutional claim based on a failure to grant Plaintiff's grievances. Plaintiff's complaints about the grievance process may become relevant in his underlying claim to the extent that Defendants' claim that Plaintiff has failed to exhaust his administrative remedies. But merely failing to follow the CDCR's rules regarding processing grievances does not support a constitutional claim against Defendants.

## VI. EVALUATION OF NEW CLAIMS IN PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff's First Amended complaint appears to assert two somewhat different legal claims, which were not addressed in the Court's prior screening order: a violation of the Due Process Cause based on a failure to provide due process in the original assessment of the Rules Violation, and an equal protection challenge to the punishments. The Court finds that the First Amended Complaint does not contain enough facts to sufficiently allege these constitutional violations.[1]

### A. Violation of Due Process During the Rules Violation Proceeding

Prisoners retain their right to due process subject to the restrictions imposed by the nature of the penal system. See Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply. See id. But the Due Process Clause requires certain minimum procedural protections where serious rules violations are alleged, the power of prison officials to impose sanctions is narrowly restricted by state statute or regulations, and the sanctions are severe. See id. at 556–57, 571–72 n.19.

Wolff established five constitutionally mandated procedural requirements for disciplinary proceedings. First, "written notice of the charges must be given to the disciplinary-

---

[1] The Court notes that Plaintiff was given leave to amend as to these claims (ECF No. 10, p. 5), but he opted not to (ECF No. 12).

10

action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a defense." Id. at 564. Second, "at least a brief period of time after the notice, no less than 24 hours, should be allowed to the inmate to prepare for the appearance before the [disciplinary committee]." Id. Third, "there must be a 'written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary action." Id. (quoting Morrissey v. Brewer, 408 U.S. 471, 489 (1972)). Fourth, "the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." Id. at 566. And fifth, "[w]here an illiterate inmate is involved [or] the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or ... to have adequate substitute aid ... from the staff or from a [n] ... inmate designated by the staff." Id. at 570.

A prisoner's right to due process is violated "only if he [is] not provided with process sufficient to meet the *Wolff* standard." Walker v. Sumner, 14 F.3d 1415, 1419–20 (9th Cir. 1994).

Plaintiff's First Amended Complaint does not contain a detailed description of the proceedings regarding the Rules Violation Report that resulted in his disciplinary sentence. He describes how Defendants Cox and Stanley were "responsible for conducting the hearings for Plaintiff's (RVR) Log No. # FB-14-09-056 on October 7, 2014 (RVR) Log No. # FB 14-11-031 on December 11, 2014," which suggests that hearings were conducted. He alleges that he entered a plea of guilty regarding the October 7, 2014 RVR. He also refers to the December 11, 2014 RVR being "adjudicated" but does not say how. These factual allegations do not set forth a claim for a due process violation because there are no allegations that Plaintiff lacked the procedural rights described above.

Plaintiff does allege in his legal claims section that "Defendants subjected plaintiff to atypical and significant hardship when they failed to provide plaintiff with some amount of protection or level of process such as a hearing or notice." (ECF No. 9, at p. 21). However,

this allegation alone is not enough to set forth a due process claim.

### B. Violation of Equal Protection in Punishment

Plaintiff's First Amended Complaint asserts that "Defendants treated plaintiff differently then [sic] other inmates who were found guilty of California Department of Corrections and Rehabilitation Rules Violation Reports, in the general population at Kern Valley State Prison and placed on temporary 'C' status." (Id. at p. 22). The Court reviews the applicable law regarding equal treatment below.

To state a § 1983 claim for violation of the Equal Protection Clause, Plaintiff must "show that the defendants acted with an intent or purpose to discriminate against plaintiff based on membership in a protected class." Thornton v. City of St. Helens, 425 F.3d 1158, 1166 (9th Cir. 2005). To state a claim under § 1981, Plaintiff must allege that he suffered intentional discrimination based on his race. Martin v. Ampco Sys. Parking, 2013 WL 5781311, at *14 (D. Haw. Oct. 24, 2013) (citing Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1487 (9th Cir. 1995)); Lowe v. City of Monrovia, 775 F.2d 998, 1010 (9th Cir. 1985). To state a claim under § 1985(3), Plaintiff must allege a conspiracy motivated by race or class-based discriminatory animus. Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 267-68 (1993); see Bretz v. Kelman, 773 F.2d 1026, 1028 (9th Cir. 1985) (explaining that an allegation of race or class-based discrimination is required to plead a § 1985(3) claim).

Plaintiff has not set forth an equal protection claim based on the facts alleged thus far. He states that he did not receive the same treatment as others, but does not allege that he is part of a protected class or facts indicating that his disparate treatment was as a result of his membership in a protected class. Merely alleging that someone else received a different punishment than Plaintiff based on similar facts does not itself state a violation of the Constitution, even if it seems unfair.

### VII. CONCLUSION AND RECOMMENDATIONS

For the foregoing reasons, IT IS HEREBY RECOMMENDED that all claims and defendants, except for Plaintiff's claim against Defendants R. Cox and C. Stanley for violation of the Eighth Amendment based on conditions of confinement (specifically the lack of outdoor

exercise), be DISMISSED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within seven (7) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **December 7, 2017**   /s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE